# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

LISA HOLT, on behalf of     )
herself and all others similarly  )
situated,                          )
                                 )    **JURY DEMAND**
       **Plaintiff,**         )
                                 )    **Case No. _____**
     **v.**                     )
                                 )
COMMUNITY AMERICA CREDIT UNION,  )
                               )
     **Defendant.**        )

## CLASS ACTION COMPLAINT

1. Plaintiff, Lisa Holt, on behalf of herself and all others similarly situated, by counsel, brings this action against Defendant Community America Credit Union ("CA") over (i) the improper assessment and collection of $28 Overdraft Fees or Paid NSF Fees (collectively, "Overdraft Fees") on accounts that were never actually overdrawn, and (ii) the improper assessment and collection of multiple Non-Sufficient Funds Fees or Return NSF Fees (collectively, "NSF Fees") on a single transaction. These practices are in breach of CA's Membership and Account Agreement, attached hereto as <u>Exhibit A</u>, and Fee Schedule, attached hereto as <u>Exhibit B</u> (collectively, the "Agreement"). These practices are also in breach of CA's duty of good faith and fair dealing, and unjustly enrich CA to the detriment of its customers.

2. Through the imposition of these fees, CA has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its members' financial struggles into revenue.

1

Plaintiff, like thousands of others, has fallen victim to CA's overdraft fee revenue maximization scheme. Since just 2017, CA charged Ms. Holt nearly $1,500 in Overdraft and NSF Fees.

3. Plaintiff asserts this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, for damages and other relief arising from CA's routine practice of assessing Overdraft Fees on accounts that were never actually overdrawn, and multiple NSF Fees on a single transaction.

## PARTIES

4. Plaintiff, Lisa Holt, resides in Independence, Missouri, and is a citizen and resident of the State of Missouri and has a checking account with CA.

5. Defendant CA is citizen of Kansas as it is a credit union headquartered in, and has its principal place of business in, Lenexa, Kansas. CA is regulated under the authority of the Missouri Division of Credit Unions and the National Credit Union Administration (NCUA). It operates 32 branch locations in Missouri and Kansas. CA provides retail banking services to its customers, including Plaintiff and members of the proposed classes. CA has approximately $2.6 billion in assets.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive

of interest and costs, and at least one of the members of the proposed Class is a citizen of a different state than CA.

7. CA regularly and systematically conducts business and provides retail banking services to its customers, including Plaintiff and members of the putative classes, in this district. As such, it is subject to the jurisdiction of this Court.

8. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because CA is subject to personal jurisdiction in this Court and regularly conducts business within this district through its multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district and the Agreement requires this action to be brought in a court of competent jurisdiction in Missouri.

**FACTS**

A. <u>CA ASSESSES OVERDRAFT FEES ON ACCOUNTS THAT ARE NOT OVERDRAWN.</u>

9. Plaintiff's checking account with CA was at all relevant times governed by the Agreement, CA's standardized form contract for deposit accounts, the material terms of which are drafted by CA, amended by CA from time to time at its convenience and complete discretion, and imposed by CA on all its deposit account customers.

10. Pursuant to the Agreement, CA charges Overdraft Fees (currently in the amount of $28) for transactions that purportedly result in an overdraft.

3

11. CA's checking account contract documents discussing Overdraft Fees promised that CA will only assess Overdraft Fees when "the funds in your account are not sufficient to cover drafts, fees or other items posted to your account, whether the transaction was made by check, electronically, or otherwise." Ex. A at 6.

12. In breach of this promise, CA assesses Overdraft Fees when there are sufficient funds in the account to cover the transaction at issue.

13. For those items assessed an Overdraft Fee when CA's own account statements show that the account was positive, not negative, and therefore had sufficient funds to cover the items, there wasn't an overdrawn account, yet CA assesses Overdraft Fees on them anyway.

14. CA is not authorized by contract to charge Overdraft Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

i. <u>CA Imposed Overdraft Fees on Transactions That Did Not Overdraw Plaintiff's Account</u>

15. Plaintiff has a checking account with CA.

16. On November 21, 2017, CA rejected a check against Plaintiff's account in the amount of $300 when Plaintiff's account balance was $336.09. In other words, Plaintiff's account had sufficient funds to cover the item, yet CA charged her a $28 Overdraft Fee on the item anyway:

```
Nov21 Check No.      198123                      -300.00     336.09
Nov21 UNSPECIFIED TRANSFER                        -28.00     308.09
       Check No.     198123
```

4

17. Contrary to the Agreement, CA charged Plaintiff an Overdraft Fee even though Plaintiff's account had sufficient funds to cover the transaction.

B.    CA CHARGES MULTIPLE NSF FEES ON THE SAME ITEM.

18. Pursuant to the Agreement, when an CA customer attempts a transaction but does not have sufficient funds to cover it CA may (a) authorize the transaction and charge a single $28 Overdraft Fee or Paid NSF Fee, or (b) reject the transaction and charge a single $28 NSF Fee. Ex. A at 6; Ex. B.

19. However, CA regularly assesses two or more NSF Fees on the same transaction or item.

20. Ms. Holt does not dispute CA's right to reject an item and charge a single NSF Fee, but CA unlawfully maximizes its already profitable NSF Fees by using deceptive practices that also violate the express terms of its Agreement.

21. Specifically, CA unlawfully assesses multiple NSF Fees on a single ACH item.

22. Unbeknownst to consumers, each time CA reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, CA chooses to treat it as a new and unique item that is subject to yet another NSF Fee. But the Agreement never discloses that this counterintuitive and deceptive result could be possible and, in fact, suggests the opposite.

23. This abusive practice is not universal in the banking industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not charge repeated NSF Fees

5

on the same item when it is reprocessed for payment. Instead, they charge one NSF Fee even if an item is processed for payment multiple times.

24. Worse, CA's account contracts never disclose this practice. To the contrary, those contracts indicate CA will not undertake this practice.

### *i.   CA Account Documents*

25. The Agreement provides the general terms of Plaintiff's relationship with CA and makes promises and representations regarding how transactions will be processed and when NSF Fees may be assessed.

26. The Agreement states that "whether ***the item*** is paid or returned, your account may be subject to ***a charge*** as set forth in the…Fee Schedule," indicating that CA may only assess a single NSF Fee (i.e., a single "charge") per "item." Ex. A at 6 (emphasis added).

27. The Fee Schedule states:

"Insufficient Funds Item Fee (Transaction Paid or Returned)….$28.00 ***per item***."

 Ex. B. (emphasis added).

28. CA regularly charges two or more NSF Fees per transaction or item when the customer has insufficient funds in her account.

29. The same "item," most importantly here ACH withdrawals, on an account cannot conceivably become new items each time they are rejected for payment then reprocessed, especially when—as here—Ms. Holt took no action to reprocess them.

6

30. There is zero indication anywhere in the Agreement that the same "item" is eligible to incur multiple NSF Fees. To the contrary, the Agreement refers to a singular "item."

31. Even if CA reprocesses an instruction for payment, it is still the same "item." CA's reprocessing is simply another attempt to effectuate an accountholder's original request for payment.

32. The disclosures described above never discuss a circumstance where CA may assess multiple NSF Fees for a single item that was returned for insufficient funds and later reprocessed one or more times.

33. In sum, CA promises that one $28 NSF Fee will be assessed per "item," and that term must mean all iterations of the same request for payment. As such, CA breached the Agreement when it charged more than one NSF Fee per item.

34. Reasonable consumers understand any given authorization for payment to be one, singular "item" as those terms are used in the Agreement.

35. Taken together, the material representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which CA will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does CA disclose that it will treat each reprocessing of a check or ACH

7

payment as a separate item, subject to additional fees, nor do CA customers ever agree to such fee arrangements.

36. Customers reasonably understand, based on the language of the Agreement, that CA's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

37. Banks and credit unions like CA that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something CA never did.

38. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as CA, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*First Citizens Bank Deposit Account Agreement*, First Citizens Bank, https://www.firstcitizens.com/personal/banking/deposit-agreement (last visited July 5, 2019) (emphasis added).

39. First Hawaiian Bank engages in the same abusive practices as CA, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY**

8

**BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1 .pdf (last visited July 5, 2019) (emphasis added).

40. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

41. First Financial Bank in Ohio, aware of the commonsense meaning of "item,"

clarifies the meaning of that term to its accountholders:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank /eBanking_Disclosure_of_Charges.pdf.

42. CA provides no such disclosures, and in so doing, deceives its accountholders.

9

*ii.   CA Assesses Multiple NSF Fees Against Plaintiff*

43. On September 12, 2017, CA rejected Check 1611 for $665.00 due to insufficient funds and assessed Plaintiff a $28 NSF Fee. On September 15, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same transaction, and charged Plaintiff *another* $28 NSF Fee. In total, CA charged Plaintiff $56 to process a single item.

44. On October 20, 2017, CA rejected Check 172590 for $300.00 due to insufficient funds, and assessed Plaintiff a $28 NSF Fee. On October 25, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same transaction, and charged Plaintiff *another* $28 NSF Fee. On October 30, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same transaction for the third time, and charged Plaintiff *another* $28 NSF Fee. In total, CA charged Plaintiff $84 to process a single item.

45. On December 18, 2018, CA rejected an ACH transaction from Shelter Life for $107.53 due to insufficient funds and charged Plaintiff a $28 NSF Fee. On December 24, 2018, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same transaction, and charged Plaintiff *another* $28 NSF Fee. In total, CA charged Plaintiff $56 to process a single item.

46. *In total, CA charged Plaintiff $196 to process three items.*

47. Plaintiff understood each transaction to be a single transaction as is laid out in the Agreement, capable at most of receiving a single NSF Fee per item.

C.     THE IMPOSITION OF IMPROPER OVERDRAFT FEES AND NSF FEES BREACHES CA'S DUTY OF GOOD FAITH AND FAIR DEALING.

48. Pursuant to Missouri law, a duty of good faith and fair dealing is imposed on banks and credit unions when they are inherently in a superior position to their accountholders.  They have a superior vantage point when offering accountholders contracts of adhesion in the form of the Agreement, the terms of which are sometimes, as here, not readily discernable to a layperson such as Ms. Holt and other accountholders. If a contract is ambiguous, then a duty to act in good faith will be imposed. Indeed, CA has a duty to honor transaction requests in a way that is fair to Ms. Holt and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the accountholder.

49. Here—in the adhesion agreements CA foisted on Plaintiff and its other customers—CA has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, CA abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged improper Overdraft Fees and NSF Fees.

50. When CA acts this way, it is not acting in good faith by defining the meaning of overdrafts, sufficient funds, and "item" in unreasonable ways that violates common sense and reasonable consumer expectations. CA sets the meaning of these terms in such a way that unfairly causes more Overdraft Fees and NSF Fees.

51. In addition, CA acts to the prejudice of Ms. Holt and its other customers when it charges Overdraft Fees on accounts that are not actually overdrawn, or reprocesses an item when it knows a customer's account lacks funds so it can charge additional NSF Fees on a single item. Further, CA abuses its superior bargaining power over accountholders and their accounts and acts contrary to their reasonable expectations under the Agreement. This is a breach of CA's implied duty of good faith and fair dealing.

52. It was bad faith and totally outside of Ms. Holt's and other accountholders' reasonable expectations for CA to assess fees in this manner.

## CLASS ALLEGATIONS

A.    <u>THE OVERDRAFT FEE CLASS</u>

53. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "Overdraft Fee Class"):

> All Community America Credit Union checking account holders who were assessed overdraft fees on transactions that did not overdraft their checking accounts.

54. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "NSF Fee Class"):

All Community America Credit Union checking account holders who were assessed multiple NSF Fees on an item.

55. The Overdraft Fee Class and the NSF Fee Class are referred to herein individually as a "Class," and together the "Classes."

56. Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

57. Excluded from the Classes are CA, its parents, subsidiaries, affiliates, officers and directors, any entity in which CA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

59. Each Class consists of thousands of members, such that joinder of all Overdraft Fee Class members is impracticable.

60. There are questions of law and fact that are common to all members of each Class that relate to CA's practice of charging Overdraft Fees on transactions that did not overdraw checking accounts and charging multiple NSF Fees on a single item.

61. The claims of Plaintiff are typical of the claims of the proposed Classes because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the members of the Classes.

13

62. Plaintiff is an adequate representative of the Classes and has retained competent legal counsel experienced in class actions and complex litigation.

63. The questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, particularly because the focus of the litigation will be on CA's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether CA:

⟩ Imposed Overdraft Fees on transactions that did not overdraw checking accounts.

⟩ Imposed multiple NSF Fees on a single item.

⟩ Breached its contract with Plaintiff and members of each Class.

⟩ Breached the covenant of good faith and fair dealing imposed on it.

⟩ Was unjustly enriched when it collected Overdraft Fees on transactions that did not overdraw checking accounts and multiple NSF Fees on a single item.

64. Other questions of law and fact common to the Classes include the proper method or methods by which to measure damages.

65. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual members of the Classes, and certification as a class action will preserve judicial resources by allowing the common issues of the members of the Classes to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. Since the amount of each individual Class member's claim is small relative to

14

the complexity of the litigation, and due to the financial resources of CA, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and CA's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Classes will remain unaware of CA's conduct and the claims they may possess.

66. It appears that other persons who fall within the definitions of the Classes set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

67. This proposed class action does not present any unique management difficulties.

## COUNT ONE: BREACH OF CONTRACT
### (o*n behalf of Plaintiff and the Overdraft Fee Class*)

68. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

69. All CA's account holders, including Plaintiff and the members of the Overdraft Fee Class, are subject to the Agreement.

70. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

71. Similarly, members of the Overdraft Fee Class and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

15

72. CA misconstrued in the Agreement its true Overdraft Fee processing practices and breached the express terms of the Agreement.

73. No contract provision authorizes CA to charge Overdraft Fees on transactions that did not overdraw checking accounts.

74. CA breached the terms of the Agreement by charging Overdraft Fees on transactions that did not overdraw checking accounts.

75. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

76. Plaintiff and members of the Overdraft Fee Class have sustained damages because of CA's breach of the Agreement.

## COUNT TWO: BREACH OF CONTRACT
**(o***n behalf of Plaintiff and the NSF Fee Class***)**

77. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

78. All CA's account holders, including Plaintiff and the members of the NSF Fee Class, are subject to the Agreement.

79. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

80. Similarly, members of the NSF Fee Class and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

16

81. CA misconstrued in the Agreement its true NSF Fee practices and breached the express terms of the Agreement.

82. No contract provision authorizes CA to charge multiple NSF Fees on a single item or transaction.

83. CA breached the terms of its account contracts by charging multiple NSF Fees on a single item or transaction.

84. Plaintiff and members of the NSF Fee Class have performed all, or substantially all, of the obligations imposed on them under the contract.

85. Plaintiff and members of the NSF Fee Class have sustained damages because of CA's breach of the contract.

## COUNT THREE: BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING
**(O*n behalf of Plaintiff, the Overdraft Fee Class, and the NSF Fee Class*)**

86. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

87. All CA's account holders, including Plaintiff, members of the Classes, are subject to the Agreement.

88. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

89. Similarly, members of the Classes and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

90. Missouri imposes a duty of good faith and fair dealing on contracts between banks and their customers because banks are inherently in a superior position to their checking account holders because, from a superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

91. CA abuses its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging Overdraft Fees on transactions that did not overdraw checking accounts and charging multiple NSF Fees on a single item. This is an abuse of the power that CA has over Plaintiff and her bank account, is contrary to Plaintiff's reasonable expectations under the Agreement, and breaches CA's implied covenant to engage in fair dealing and act in good faith.

92. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

93. CA has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

94. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Agreement.

18

95. Plaintiff and members of the Classes have sustained damages because of CA's breach of the covenant of good faith and fair dealing.

## COUNT FOUR: UNJUST ENRICHMENT
### (on behalf of Plaintiff, the Overdraft Fee Class, and the NSF Fee Class)

96. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

97. Plaintiff and members of the Classes conferred a benefit on CA at the expense of Plaintiff and members of the Classes when they paid improper Overdraft Fees and NSF Fees.

98. CA appreciated this benefit in the form of the substantial revenue that CA generates from the imposition of such fees.

99. CA has accepted and retained such fees under inequitable and unjust circumstances.

100.    CA should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Classes and should be required to make restitution to Plaintiff and members of the Classes.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

A.      Certification for this matter to proceed as a class action under action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Restitution of all improper Overdraft Fees and NSF Fees paid to CA by Plaintiff and the Classes, because of the wrongs alleged herein in an amount to be determined at trial;

C.      Actual damages in an amount according to proof;

D.      Pre- and post- judgment interest at the maximum rate permitted by applicable law;

E.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

F.      Attorneys' fees under the common fund doctrine and all other applicable law; and

G.      Such other relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff, by counsel, demands trial by jury.

20

Dated: August 8, 2019                    Respectfully submitted,

/s/ Ashlea G. Schwarz
Ashlea Schwarz (Mo. Bar No. 60102)
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
ashlea@paulllp.com

Lynn A. Toops*
Vess. A. Miller*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
T: (501) 372-1300
chris@yourattorney.com

J. Gerard Stranch, IV *
Martin F. Schubert *
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gerards@bsjfirm.com
martys@bsjfirm.com

* *Pro Hac Vice* application to be submitted

**Counsel for Plaintiff and the Proposed
Plaintiff Classes**

21