## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **LISA HOLT, on behalf of** ) | |
| **herself and all others similarly** ) | |
| **situated,** ) | |
| ) | **JURY DEMAND** |
| **Plaintiff,** ) | |
| ) | **Case No. 4:19-cv-00629-FJG** |
| **v.** ) | |
| ) | |
| **COMMUNITY AMERICA CREDIT** ) | |
| **UNION,** ) | |
| ) | |
| **Defendant.** ) | |

## AMENDED CLASS ACTION COMPLAINT

1.   Plaintiff, Lisa Holt, on behalf of herself and all others similarly situated, by counsel,

brings this action against Defendant Community America Credit Union ("CA") over (i)

the improper assessment and collection of $28 "Unspecified Transfer" Fees on accounts

that were never actually overdrawn ("Overdraft Fees"), and (ii) the improper assessment

and collection of multiple "Unspecified Transfer" Fees on a single item or transaction

returned for insufficient funds ("NSF Fees"). These practices are in breach of CA's

Membership and Account Agreement (the "Agreement"), attached hereto as <u>Exhibit A</u>,

and Fee Schedule, attached hereto as <u>Exhibit B</u>. These practices are also in breach of CA's

duty of good faith and fair dealing, and unjustly enrich CA to the detriment of its

customers.

1

2. Through the imposition of these fees, CA has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its members' financial struggles into revenue. Plaintiff, like thousands of others, has fallen victim to CA's fee revenue maximization scheme. Since just 2017, CA charged Ms. Holt nearly $1,500 in fees.

3. Plaintiff asserts this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, for damages and other relief arising from CA's routine practice of assessing Overdraft Fees on accounts that were never actually overdrawn, and multiple NSF Fees on a single item or transaction returned for insufficient funds.

**PARTIES**

4. Plaintiff, Lisa Holt, resides in Independence, Missouri, and is a citizen and resident of the State of Missouri and has a checking account with CA.

5. Defendant CA is citizen of Kansas as it is a credit union headquartered in, and has its principal place of business in, Lenexa, Kansas. CA is regulated under the authority of the Missouri Division of Credit Unions and the National Credit Union Administration (NCUA). It operates 32 branch locations in Missouri and Kansas. CA provides retail banking services to its customers, including Plaintiff and members of the proposed classes. CA has approximately $2.6 billion in assets.

2

## JURISDICTION AND VENUE

6.   This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a citizen of a different state than CA.

7.   CA regularly and systematically conducts business and provides retail banking services to its customers, including Plaintiff and members of the putative classes, in this district. As such, it is subject to the jurisdiction of this Court.

8.   Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because CA is subject to personal jurisdiction in this Court and regularly conducts business within this district through its multiple branches located within this district. In addition, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district and the Agreement requires this action to be brought in a court of competent jurisdiction in Missouri.

## FACTS

### A.   CA ASSESSES OVERDRAFT FEES ON ACCOUNTS THAT ARE NOT OVERDRAWN.

9.   Plaintiff's checking account with CA was at all relevant times governed by the Agreement, CA's standardized form contract for deposit accounts, the material terms of

3

which are drafted by CA, amended by CA from time to time at its convenience and complete discretion, and imposed by CA on all its deposit account customers.

10. Pursuant to the Agreement, CA charges Overdraft Fees (currently in the amount of $28) for transactions that purportedly result in an overdraft.

11. CA's checking account contract documents discussing Overdraft Fees promised that CA will only assess Overdraft Fees when "the funds in your account are not sufficient to cover drafts, fees or other items posted to your account, whether the transaction was made by check, electronically, or otherwise." Ex. A at 6.

12. CA's Agreement then states that "[w]hether the item is paid or returned, your account may be subject to a charge as set forth in the Rate Sheet and Fee Schedule." Ex. A at 6. The Fee Schedule provides:

Insufficient Funds Item Fee[3]……………………………………..$28.00 per item (Transaction Paid or Returned)

[3]Insufficient Funds Item fee may extend to checks, preauthorized debits, debit card point of sale (POS) transactions, ATM withdrawals or transfers, telephone transfers, in-branch withdrawals, online bill payments and interment banking transactions.

Ex. B.

13. In breach of this promise, CA assesses Overdraft Fees (or Insufficient Funds Item Fees (Transaction Paid)) when there are sufficient funds in the account to cover the items posted to the account.

14. For those items assessed an Overdraft Fee when CA's own account statements show that the account was positive, not negative, after the items posted, and therefore

4

had sufficient funds to cover the items, there wasn't an overdrawn account, yet CA assesses Overdraft Fees on those items anyway.

15. CA is not authorized by contract to charge Overdraft Fees on items that have not overdrawn an account, but it has done so and continues to do so.

    i.    <u>CA Imposed Overdraft Fees on Transactions That Did Not Overdraw Plaintiff's Account</u>

16. Plaintiff has a checking account with CA.

17. On November 21, 2017, CA rejected Check No. 198123 posted against Plaintiff's account in the amount of $300 when Plaintiff's account balance was $336.09. In other words, Plaintiff's account had sufficient funds to cover the item, yet CA charged her a $28 "Unspecified Transfer" Fee on the check anyway:

```
Nov21  Check No.     198123                        -300.00      336.09
Nov21  UNSPECIFIED TRANSFER                         -28.00      308.09
       Check No.     198123
```

18. The Agreement does not permit CA to assess an "Unspecified Transfer" Fee and it is therefore an improperly assessed fee.

19. And, contrary to the Agreement, CA charged Plaintiff a fee even though Plaintiff's account had sufficient funds to cover Check No. 198123.

<u>B.    CA IMPROPERLY CHARGES MULTIPLE NSF FEES ON THE SAME ITEM RETURNED FOR INSUFFICIENT FUNDS.</u>

20. Pursuant to the Agreement, when a CA customer attempts a transaction but does not have sufficient funds to cover it CA may (a) authorize the transaction and charge a single $28 Overdraft Fee (i.e., an Insufficient Funds Item Fee (Transaction Paid)), or (b)

5

reject the transaction and charge a single $28 NSF Fee (i.e., an Insufficient Funds Item Fee (Transaction Returned)). Ex. A at 6; Ex. B.

21. However, CA doesn't assess an NSF Fee when it rejects the transaction for insufficient funds. Instead, it charges a $28 "Unspecified Transfer" Fee. Plaintiff did not agree to be assessed an "Unspecified Transfer" Fee and the Agreement doesn't permit CA to assess an "Unspecified Transfer" Fee.

22. Further, CA regularly assesses two or more NSF Fees on the same transaction or item when the Agreement and Fee Schedule promise that CA will only change a singular NSF Fee "per item."

23. Ms. Holt does not dispute CA's right to reject an item and charge a single NSF Fee, but CA improperly assesses "Unspecified Transfer" Fees that are mentioned nowhere in the Agreement or Fee Schedule.

24. Worse, CA improperly assesses multiple NSF Fees on a single item.

25. Unbeknownst to consumers, each time CA reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, CA chooses to treat it as a new and unique item that is subject to yet another fee. But Plaintiff never agreed to be subject to this practice and, in fact, CA promises that it will only assess one NSF Fee on an item.

26. This abusive practice is not universal in the banking industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not charge repeated

6

insufficient fund fees on the same item when it is represented by the merchant and reprocessed for payment. Instead, they charge one insufficient funds fee even if an item is represented by the merchant and reprocessed for payment multiple times.

27. Worse, CA's account contracts do not indicate that the parties ever agreed to this practice, or to the assessment of any "Unspecified Transfer" Fees. To the contrary, those contracts indicate CA will not undertake these practices.

*i.   CA Account Documents*

28. The Agreement provides the general terms of Plaintiff's relationship with CA and makes promises and representations regarding how transactions will be processed and when fees may be assessed.

29. The Agreement states that "[w]hether **the item** is paid or returned, your account may be subject to **a charge** as set forth in the...Fee Schedule," indicating that CA may only assess a single fee (i.e., a single "charge") on "the item." Ex. A at 6 (emphasis added).

30. The Fee Schedule states:

Insufficient Funds Item Fee[3]………………………………………..$28.00 ***per item***
(Transaction Paid or Returned)

[3]Insufficient Funds Item fee may extend to checks, preauthorized debits, debit card point of sale (POS) transactions, ATM withdrawals or transfers, telephone transfers, in-branch withdrawals, online bill payments and internet banking transactions.

Ex. B (emphasis added).

31.  Thus, under the terms of CA's own contract, an Insufficient Funds Item Fee can only extend to "checks, preauthorized debits, debit card point of sale (POS) transactions,

ATM withdrawals or transfers, telephone transfers, in-branch withdrawals, online bill payments and internet banking transactions." Ex. B. Indeed, CA's own definition of item ("checks, preauthorized debits, debit card point of sale (POS) transactions, ATM withdrawals or transfers, telephone transfers, in-branch withdrawals, online bill payments and internet banking transactions") does not extend to a merchant's representment of the item or CA's reprocessing of the item.

32. In breach of the Agreement and Fee Schedule, CA regularly charges two or more "Unspecified Transfer" Fees per transaction or item when the customer has insufficient funds in her account.

33. The same "item" on an account cannot conceivably become new items each time they are rejected for payment then reprocessed, especially when—as here—Ms. Holt took no action to reprocess them.

34. There is zero indication anywhere in the Agreement that the same "item" is eligible to incur multiple NSF Fees. To the contrary, the Agreement refers to a singular "item."

35. Even if CA reprocesses an instruction for payment, it is still the same "item." CA's reprocessing is simply another attempt to effectuate an accountholder's original request for payment.

8

36. And CA's account statements reinforce that the reprocessing of an original instruction for payment is still the same "item" because the statements refer to the reprocessing as a "Retry" of the original item.

37. The contract never addresses a circumstance where CA may assess multiple fees for a single item that was returned for insufficient funds and later re-presented and reprocessed one or more times.

38. In sum, CA promises that one $28 fee will be assessed "per item," and that term means all iterations of the same request for payment.  As such, CA breached the Agreement and the Fee Schedule when it charged more than one fee per item.

39. Reasonable consumers understand any given authorization for payment to be one, singular "item" as those terms are used in the Agreement.

40. Taken together, the material representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which CA will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere do the parties agree that CA will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do CA customers ever agree to such fee arrangements.

41. Customers reasonably understand, based on the language of the Agreement and Fee Schedule, that CA's reprocessing of checks or ACH payments are simply additional

attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

42. Banks and credit unions like CA that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something CA never did.

43. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as CA, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*First Citizens Bank Deposit Account Agreement*, First Citizens Bank,

https://www.firstcitizens.com/personal/banking/deposit-agreement (last visited October 10, 2019) (emphasis added).

44. First Hawaiian Bank engages in the same abusive practices as CA, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

10

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank,

https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Condition

s_of_FHB_Online_Services_RXP1.pdf (last visited October 10, 2019) (emphasis added).

    45. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment
> (electronic or check) is submitted to us for payment from your Bill Payment
> Account when, at the time of posting, your Bill Payment Account is
> overdrawn, would be overdrawn if we paid the item (whether or not we in
> fact pay it) or does not have sufficient available funds; or (2) we return,
> reverse, or decline to pay an item for any other reason authorized by the
> terms and conditions governing your Bill Payment Account. **We will charge**
> **an NSF/Overdraft Fee as provided in this section regardless of the**
> **number of times an item is submitted or resubmitted to us for payment,**
> **and regardless of whether we pay the item or return, reverse, or decline**
> **to pay the bill payment.**

> *Consumer and Small Business Online Access Agreement*, ¶ H,

https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last visited Oct.

10, 2019) (emphasis added).

    46. First Financial Bank in Ohio, aware of the commonsense meaning of "item,"

clarifies the meaning of that term to its accountholders:

> Merchants or payees may present an item multiple times for payment if the
> initial or subsequent presentment is rejected due to insufficient funds or
> other reason (representment). **Each presentment is considered an item and**
> **will be charged accordingly.**

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank (Aug.

2018), https://www.bankatfirst.com/content/dam/first-financial-bank

/eBanking_Disclosure_of_Charges.pdf (emphasis added).

47. Central Pacific Bank, a leading bank in Hawai'i, states in its fee schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment**, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." *Miscellaneous Fee Schedule*, page 1,

https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx (last visited Oct. 10, 2019) (emphasis added).

48. BP Federal Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; **therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item**." *Membership and Account Agreement*, page 4, https://www.bpfcu.org/images/docs/membership-agreement.pdf (last visited Oct. 10, 2019) (emphasis added).

49. CA makes no such agreement with its members.

*ii.   CA Assesses Multiple NSF Fees Against an Item on Plaintiff's Account*

50. On September 12, 2017, CA rejected Check No. 1611 for $665.00 due to insufficient funds and assessed Plaintiff a $28 "Unspecified Transfer" Fee:

| Sep12 | Check No. | 1611 | | -665.00 | 40.56 |
| Sep12 | UNSPECIFIED TRANSFER | | 5833456 | -28.00 | 12.56 |
| | Check No. | 1611 | | | |

12

51. On September 15, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same item again (Check No. 1611), and charged Plaintiff *another* $28 "Unspecified Transfer" Fee:

```
Sep15 Check No.      1611                              -665.00        23.59
Sep15 UNSPECIFIED TRANSFER         5098424             -28.00         -4.41
      Check No.      1611
```

In total, CA charged Plaintiff $56 in "Unspecified Transfer" Fees to process a single item, Check No. 1611.

52. On October 20, 2017, CA rejected Check No. 172590 for $300.00 due to insufficient funds, and assessed Plaintiff a $28 "Unspecified Transfer" Fee:

```
Oct20 Check No.    172590                              -300.00         4.95
Oct20 UNSPECIFIED TRANSFER         5154006             -28.00        -23.05
      Check No.    172590
```

53. On October 25, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same item again (Check No. 172590), and charged Plaintiff *another* $28 "Unspecified Transfer" Fee:

```
Oct25 Check No.    172590                              -300.00        -51.05
Oct25 UNSPECIFIED TRANSFER         5387018             -28.00        -79.05
      Check No.    172590
```

54. On October 30, 2017, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same item again (Check No. 172590), for the third time, and charged Plaintiff *another* $28 "Unspecified Transfer" Fee:

```
Oct30 Check No.    172590                              -300.00        -27.22
Oct30 UNSPECIFIED TRANSFER         5540440             -28.00        -55.22
```

In total, CA charged Plaintiff $84 in "Unspecified Transfer" Fees to process a single item, Check No. 172590.

55. On December 18, 2018, CA rejected an ACH transaction from Shelter Life for $107.53 due to insufficient funds and charged Plaintiff a $28 "Unspecified Transfer" Fee:

```
Dec18 UNSPECIFIED TRANSFER    REG-E TRANSACTION         -107.53        6.79
       SHELTER LIFE    -LIFE PYMT
Dec18 UNSPECIFIED TRANSFER    REG-E TRANSACTION          -28.00      -21.21
       SHELTER LIFE    -LIFE PYMT
```

56. On December 24, 2018, unbeknownst to Plaintiff and without her request to CA to retry the item, CA processed the same item again (Shelter Life ACH transaction), and charged Plaintiff *another* $28 "Unspecified Transfer" Fee:

```
Dec24 UNSPECIFIED TRANSFER    REG-E TRANSACTION         -107.53         .00
       SHELTER LIFE    -RETRY PYMT
Dec24 UNSPECIFIED TRANSFER    REG-E TRANSACTION          -28.00      -28.00
       SHELTER LIFE    -RETRY PYMT
```

In total, CA charged Plaintiff $56 to process a single item, the Shelter Life ACH transaction.

57. *In total, CA charged Plaintiff $196 to process three items.*

58. Plaintiff did not agree to be assessed an "Unspecified Transfer" Fee and it is therefore an improper fee.

59. Plaintiff understood each transaction to be a single item or transaction as is laid out in the Agreement and Fee Schedule, capable at most of receiving a single Insufficient Funds Item Fee per item.

14

## C. THE IMPOSITION OF IMPROPER FEES BREACHES CA'S DUTY OF GOOD FAITH AND FAIR DEALING.

60. Pursuant to Missouri law, a duty of good faith and fair dealing is imposed on banks and credit unions when they are inherently in a superior position to their accountholders. They have a superior vantage point when offering accountholders contracts of adhesion in the form of the Agreement, the terms of which are sometimes, as here, not readily discernable to a layperson such as Ms. Holt and other accountholders. If a contract is ambiguous, then a duty to act in good faith will be imposed. Indeed, CA has a duty to honor transaction requests in a way that is fair to Ms. Holt and its other members and is prohibited from exercising its discretion to pile on ever greater penalties on the member.

61. Here—in the adhesion agreements CA foisted on Plaintiff and its other members—CA has provided itself numerous discretionary powers affecting members' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, CA abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

62. When CA acts this way, it is not acting in good faith by defining the meaning of "sufficient," "to cover" and "item" in unreasonable ways that violates common sense and reasonable consumer expectations. CA sets the meaning of these terms in such a way that unfairly causes more fees.

15

63. In addition, CA acts to the prejudice of Ms. Holt and its other customers when it charges Overdraft Fees on accounts that are not actually overdrawn, or reprocesses an item when it knows a customer's account lacks funds so it can charge additional fees on a single item returned for insufficient funds. Further, CA abuses its superior bargaining power over accountholders and their accounts and acts contrary to their reasonable expectations under the Agreement. This is a breach of CA's implied duty of good faith and fair dealing.

64. It was bad faith and totally outside of Ms. Holt's and other accountholders' reasonable expectations for CA to assess fees in this manner.

## CLASS ALLEGATIONS

A.      THE OVERDRAFT FEE CLASS

65. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "Overdraft Fee Class"):

> All Community America Credit Union checking account holders who were assessed fees on transactions that did not overdraft their checking accounts.

66. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "Multiple NSF Fee Class"):

> All Community America Credit Union checking account holders who were assessed multiple fees on an item.

67. Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed class (the "Unspecified Transfer Fee Class"):

16

All Community America Credit Union checking account holders who were assessed an Unspecified Transfer Fee.

68. The Overdraft Fee Class, the Multiple NSF Fee Class, and the Unspecified Transfer Fee Class are referred to herein individually as a "Class," and together the "Classes."

69. Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

70. Excluded from the Classes are CA, its parents, subsidiaries, affiliates, officers and directors, any entity in which CA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

71. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

72. Each Class consists of thousands of members, such that joinder of all Overdraft Fee Class members is impracticable.

73. There are questions of law and fact that are common to all members of each Class that relate to CA's practice of charging Overdraft Fees on transactions that did not overdraw checking accounts, charging multiple NSF Fees on a single item, and charging Unspecified Transfer Fees.

74. The claims of Plaintiff are typical of the claims of the proposed Classes because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the members of the Classes.

17

75. Plaintiff is an adequate representative of the Classes and has retained competent legal counsel experienced in class actions and complex litigation.

76. The questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, particularly because the focus of the litigation will be on CA's conduct. The predominant questions of law and fact in this litigation include, but are not limited to, whether CA:

- Imposed Overdraft Fees on transactions that did not overdraw checking accounts.

- Imposed multiple NSF Fees on a single item.

- Imposed Unspecified Transfer Fees.

- Breached its contract with Plaintiff and members of each Class.

- Breached the covenant of good faith and fair dealing imposed on it.

- Was unjustly enriched when it collected the fees challenged in this Complaint.

77. Other questions of law and fact common to the Classes include the proper method or methods by which to measure damages.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of hundreds of individual lawsuits would not be economically feasible for individual members of the Classes, and certification as a class action will preserve judicial resources by allowing the common issues of the members of the Classes to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical

18

set of facts. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of CA, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and CA's misconduct will proceed without remedy. In addition, without a class action, it is likely that many members of the Classes will remain unaware of CA's conduct and the claims they may possess.

79. It appears that other persons who fall within the definitions of the Classes set forth above are not pursuing similar litigation, such that individual Class members do not wish to control the prosecution of separate actions.

80. This proposed class action does not present any unique management difficulties.

## COUNT ONE: BREACH OF CONTRACT
### (o*n behalf of Plaintiff and the Overdraft Fee Class*)

81. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

82. All CA's account holders, including Plaintiff and the members of the Overdraft Fee Class, are subject to the Agreement and Fee Schedule.

83. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

84. Similarly, members of the Overdraft Fee Class and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

19

85. CA misconstrued in the Agreement and Fee Schedule its true Overdraft Fee processing practices and breached the express terms of the Agreement and Fee Schedule.

86. No contract provision authorizes CA to charge Overdraft Fees on transactions that did not overdraw checking accounts.

87. CA breached the terms of the Agreement and Fee Schedule by charging Overdraft Fees on transactions that did not overdraw checking accounts.

88. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

89. Plaintiff and members of the Overdraft Fee Class have sustained damages because of CA's breach of the Agreement and Fee Schedule.

## COUNT TWO: BREACH OF CONTRACT
### (o*n behalf of Plaintiff and the Multiple NSF Fee Class*)

90. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

91. All CA's account holders, including Plaintiff and the members of the multiple NSF Fee Class, are subject to the Agreement and Fee Schedule.

92. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

93. Similarly, members of the Multiple NSF Fee Class and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

20

94. CA misconstrued in the Agreement and Fee Schedule its true multiple NSF Fee practices and breached the express terms of the Agreement and Fee Schedule.

95. No contract provision authorizes CA to charge multiple NSF Fees on a single item or transaction.

96. CA breached the terms of its account contracts by charging multiple NSF Fees on a single item or transaction.

97. Plaintiff and members of the multiple NSF Fee Class have performed all, or substantially all, of the obligations imposed on them under the contract.

98. Plaintiff and members of the Multiple NSF Fee Class have sustained damages because of CA's breach of the contract.

## COUNT THREE: BREACH OF CONTRACT
### (on *behalf of Plaintiff and the Unspecified Transfer Fee Class*)

99. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

100. All CA's account holders, including Plaintiff and the members of the Unspecified Transfer Fee Class, are subject to the Agreement and Fee Schedule.

101. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. See Exs. A & B.

102. Similarly, members of the Unspecified Transfer Fee Class and CA have contracts for bank account deposit, checking, and debit card services. Id.

21

103. CA misconstrued in the Agreement and Fee Schedule its Unspecified Transfer Fee practices and breached the express terms of the Agreement and Fee Schedule.

104. No contract provision authorizes CA to charge Unspecified Transfer Fees.

105. CA breached the terms of its account contracts by charging Unspecified Transfer Fees.

106. Plaintiff and members of the Unspecified Transfer Fee Class have performed all, or substantially all, of the obligations imposed on them under the contract.

107. Plaintiff and members of the Unspecified Transfer Fee Class have sustained damages because of CA's breach of the contract.

## COUNT FOUR: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (O*n behalf of Plaintiff, the Overdraft Fee Class, the Multiple NSF Fee Class, and the Unspecified Transfer Fee Class*)

108. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

109. All CA's account holders, including Plaintiff, members of the Classes, are subject to the Agreement and Fee Schedule.

110. Plaintiff and CA have contracted for bank account deposit, checking, and debit card services. *See* Exs. A & B.

111. Similarly, members of the Classes and CA have contracts for bank account deposit, checking, and debit card services. *Id.*

22

112. Missouri imposes a duty of good faith and fair dealing on contracts between banks and their customers because banks are inherently in a superior position to their checking account holders because, from a superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

113. CA abuses its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging Overdraft Fees on transactions that did not overdraw checking accounts, charging multiple NSF Fees on a single item, and charging Unspecified Transfer Fees. This is an abuse of the power that CA has over Plaintiff and her bank account, is contrary to Plaintiff's reasonable expectations under the Agreement, and breaches CA's implied covenant to engage in fair dealing and act in good faith.

114. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

115. CA has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

116. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Agreement.

117. Plaintiff and members of the Classes have sustained damages because of CA's breach of the covenant of good faith and fair dealing.

## COUNT FIVE: UNJUST ENRICHMENT
### (o*n behalf of Plaintiff, the Overdraft Fee Class, the Multiple NSF Fee Class, and the Unspecified Transfer Fee Class*)

118. Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

119. Plaintiff and members of the Classes conferred a benefit on CA at the expense of Plaintiff and members of the Classes when they paid improper fees.

120. CA appreciated this benefit in the form of the substantial revenue that CA generates from the imposition of such fees.

121. CA has accepted and retained such fees under inequitable and unjust circumstances.

122. CA should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Classes and should be required to make restitution to Plaintiff and members of the Classes.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action under action under Rule 23 of the Federal Rules of Civil Procedure;

B. Restitution of all improper fees paid to CA by Plaintiff and the Classes, because of the wrongs alleged herein in an amount to be determined at trial;

C. Actual damages in an amount according to proof;

D. Pre- and post- judgment interest at the maximum rate permitted by applicable law;

E. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

F. Attorneys' fees under the common fund doctrine and all other applicable law; and

G. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: October 23, 2019                    Respectfully submitted,

/s/ *Lynn A. Toops*
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com

Ashlea Schwarz (Mo. Bar No. 60102)
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
ashlea@paulllp.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
T: (501) 372-1300
chris@yourattorney.com

J. Gerard Stranch, IV
Martin F. Schubert
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gerards@bsjfirm.com
martys@bsjfirm.com

* *Pro Hac Vice* application to be submitted

**Counsel for Plaintiff and the Proposed
Plaintiff Classes**

26

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing by electronic mail to the attorneys and parties of record.

DATED: October 23, 2019     */s/Lynn A. Toops*
             Lynn A. Toops