IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LISA HOLT, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:19-cv-00629-FJG |
| v. | ) ) | |
| COMMUNITYAMERICA CREDIT UNION, | ) ) ) | |
| Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND EXPENSES, SETTLEMENT ADMINISTRATIOR'S COSTS AND CLASS REPRESENTATIVE'S SERVICE AWARD**

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................................... iii

Statement of Facts.......................................................................................................................... 1

Legal Standards.............................................................................................................................. 4

    I.   Courts in the Eighth Circuit commonly award attorneys' fees of one-third of the total value of a settlement. ........................................................................................................ 4

    II.  Courts in the Eighth Circuit award reimbursement of reasonable costs and expenses advanced by Class Counsel............................................................................................... 7

    III. Courts in the Eighth Circuit commonly award class representative service awards of $10,000 or more. ............................................................................................................. 8

Discussion ...................................................................................................................................... 9

    I.   The Court should award Class Counsel attorneys' fees from the Settlement Fund in the amount of one-third of the value of the Settlement. ........................................................ 9

    II.  The Court should award Class Counsel and the Settlement Administrator reimbursement from the Settlement Fund of costs and expenses incurred in litigating this case to settlement. ....................................................................................................................... 12

    III. The Court should award the Class Representative payment from the Settlement Fund of a service award of $10,000. ............................................................................................ 12

Conclusion ................................................................................................................................... 13

# Table of Authorities

**Cases**

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-4321NKL, 2015 WL 3460346 (W.D. Mo. June 1, 2015) ................................................................................................................. 5, 6, 12

*Bodnar v. Bank of Am.*, No. 5:14-cv-03224-EGS (E.D. Pa., Aug. 4, 2016) .............................. 3, 11

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ................................................................... 4

*Brooks et al. v. Canvas Credit Union*, 2019-cv-30516 (Denver Cnty., Colo., Dis. Ct., Feb. 10, 2020) ........................................................................................................................... 2, 11

*Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) .......................... 6, 8, 9, 10, 11, 13

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................................... 8

*Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ................................................................... 5

*Graves v. Old Hickory Credit Union*, No. 19-475-II (Davidson Cnty., Tenn., Chanc. Ct., Sept. 3, 2019) ....................................................................................................................... 2, 10, 11

*Hawley v. ORNL Fed. Credit Union*, No. B9LA0107 (Anderson Cnty., Tenn., Jun. 15, 2020) .... 2, 10, 11

*Hill v. Ind. Members Credit Union*, No. 49D02-1804-PL-016174 (Marion Cnty., Super. Ct., Ind., Jan. 21, 2020) .................................................................................................................. 2, 10, 11

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *25 (E.D. Mo. June 30, 2005) ........................................................................................................................ 9

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) .................................................................................... 7

*In re NuvaRing Prod. Liab. Litig.*, No. 4:08-MDL-1964-RWS, 2014 WL 7271959, *2 (E.D. Mo. Dec. 18, 2014) ..................................................................................................................... 4, 5

*In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ....................................... 5, 6, 8, 13

*Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ......................................... 4

*Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) .................................. 8

*Keslar v. Bartu*, 201 F.3d 1016, 1017 (8th Cir. 2000) (per curiam) ............................................... 7

*Khoday v. Symantec Corp.*, No. 11-cv-180, 2016 WL 1637039, at *9-11 (D. Minn. Apr. 5, 2016) ............................................................................................................................................. 6, 11

*Liggio v. Apple Fed. Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va., Dec. 6, 2019) ... 3, 11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) ...................................................... 4

*Plummer v. Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind., Sup. Ct., Oct. 2, 2020) .................................................................................................................... 2, 11

*Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939) ...................................................................... 7

*Terrell et al. v. Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cnty., Ky., Cir. Ct., Oct. 2, 2020) .............................................................................................................. 2, 10, 11

*Tisdale v. Wilson Bank & Trust*, No. 19-400-BC (Tenn. Bus. Ct., Mar. 18, 2020) ............. 2, 10, 11

*Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) ............................................................................................................................. 4, 5, 7, 8, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d. Cir. 2005) ................................. 5

*Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)). ..................... 8

*Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) .................. 8

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................................. 3, 4

Federal Rule of Civil Procedure 23(e)(1) ...................................................................................... 1

**Treatises**

5 *Newberg on Class Actions* § 17:1 (5th ed. 2015) ...................................................................... 8

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.) ...................................................................... 7

*Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ............................................................................................. 5

Eisenberg, Theodore and Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: An Empirical Study" (2004). *Cornell Law Faculty Publications*. Paper 356 ................................. 7

Principles of the Law of Aggregate Litigation, A.L.I., § 3.13(b) (May 20, 2009) ......................... 5

**STATEMENT OF FACTS**

After engaging in motion practice over the legal claims at issue in this case, having an expert project damages, and participating in an all-day mediation with mediator Michael J. Patton, Toops Decl. ¶¶ 2–8,[1] the parties reached the proposed class action Settlement Agreement and Release (the "Settlement")[2] that the Court preliminarily approved under Federal Rule of Civil Procedure 23(e)(1) on September 4, 2020. ECF No. 44. The Settlement, which was the result of hard-fought, arm's-length negotiations, provides a cash Settlement Fund of $2,325,000 for the proposed Classes and provides for CommunityAmerica Credit Union ("Defendant" or "CACU") to forgive additional uncollected fees of Class Members in the amount of $753,436.00, for a total value of the Settlement of $3,078,436. Toops Decl. ¶¶ 2–8. The Settlement represents a recovery of approximately one-half of the damages projected by the expert as the best possible day in court for the Classes, and the Settlement monies will be distributed to the members of the Classes without need for them to complete a claim form or take any additional steps. *Id*. ¶¶ 9–10, 12. The Settlement represents an excellent result for the Classes in this litigation and was obtained against a well-funded defense by CACU, which was represented by an international law firm. *Id*. ¶ 11.

This result is even more remarkable because, although Lisa Holt (the "Class Representative") believes in the merits of her claims, this litigation was inherently risky and complex. *Id*. ¶ 13. The claims involve intricacies of banking practices, and the Class Representative faced risks at each stage of litigation. *Id.* For instance, the Court could have ruled for CACU on its

---

[1] Declaration of Lynn Toops in Support of the Unopposed Motion for Preliminary Approval ("Toops Decl."), ECF No. 43-1 (Aug. 11, 2020). Plaintiff has filed a second Declaration of Lynn Toops contemporaneously herewith. *See* Declaration of Lynn Toops in Support of Plaintiff's Unopposed Motion for Award of Attorneys' Fees, Costs and Expenses, Settlement Administrator's Costs, and Class Representative's Service Award (the "Second Toops Decl."), attached as Ex. 1 to the accompanying motion.

[2] The Settlement is attached as Exhibit 1 to the Toops Declaration.

motion to dismiss, which could have left Class Members with no recovery. *Id.* Even if the Court ruled for her, the Class Representative faced the hurdle of having the Court certify a class and having that ruling potentially immediately appealed. *Id.* Without a certified class, no Class Member would likely receive any recovery. *Id.* And summary judgment, trial, and appeal present significant risks in any case. *Id.*

Against these risks, it was through the skill and hard work of Cohen & Malad, LLP, Branstetter, Stranch & Jennings, PLLC and Kaliel PLLC ("Class Counsel") and the Class Representative that the Settlement was achieved for the benefit of the Class Members. Class Counsel maintain a national class action practice and has particularly specialized skill in bank fee class actions. *See* Second Toops Decl. at ¶¶ 13-19; *see, e.g., Terrell et al. v. Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cnty., Ky., Cir. Ct., Oct. 2, 2020) (in bank fee litigation, granting attorneys' fees of one-third of $4.5 million common fund to some of the same Class Counsel here); *Martin v. L&N Fed. Credit Union*, No. 19-CI-002873 (Jefferson Cnty., Ky., Cir. Ct., Jun. 8, 2020) (in bank fee litigation, granting attorneys' fees of one-third of $2.575 million common fund to the same Class Counsel here); *Graves v. Old Hickory Credit Union*, No. 19-475-II (Davidson Cnty., Tenn., Chanc. Ct., Sept. 3, 2019) (in bank fee litigation, granting attorneys' fee of one-third of settlement to some of same Class Counsel here); *Tisdale v. Wilson Bank & Trust*, No. 19-400-BC (Tenn. Bus. Ct., Mar. 18, 2020) (same); *Hill v. Ind. Members Credit Union*, No. 49D02-1804-PL-016174 (Marion Cnty., Super. Ct., Ind., Jan. 21, 2020) (same); *Hawley v. ORNL Fed. Credit Union*, No. B9LA0107 (Anderson Cnty., Tenn., Jun. 15, 2020) (same); *Plummer v. Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind., Sup. Ct., Oct. 2, 2020) (same). This skill has been recognized in courts across the country. *See id.*; *see also Brooks et al. v. Canvas Credit Union*, 2019-cv-30516 (Denver Cnty., Colo., Dis. Ct., Feb. 10, 2020) (awarding attorneys' fees of

one-third of settlement in bank fee litigation to some of same Class Counsel here); *see also Liggio v. Apple Fed. Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va., Dec. 6, 2019) (ECF No. 39) (same); *Bodnar v. Bank of Am.*, No. 5:14-cv-03224-EGS (E.D. Pa., Aug. 4, 2016) (ECF No. 90) (same).

In addition, the Class Representative has actively participated in the lawsuit, including attending an in-person mediation during the COVID-19 pandemic, communicated with counsel, and assisted in prosecuting the case. Toops Decl. ¶ 2; Second Toops Decl. ¶ 22. Without the Class Representative investing the time and energy to pursue this litigation on behalf of the Class Members, there would be no recovery at all.

This case exemplifies the public good that can be accomplished through the class action device. The Class Representative strongly believed that CACU pocketed millions of dollars in fees that CACU's contract did not permit, and the Class Representative prosecuted this case on behalf of all Class Members, none of whom had a large enough claim to retain counsel to pursue his or her claim individually. In Class Counsel's experience, a settlement in this range is likely to be viewed favorably by the Class Members who will appreciate receiving compensation from this lawsuit without having to expend any resources of their own. Toops Decl. at ¶ 13. Through the efforts of the Class Representative and the zealous and diligent work of Class Counsel, CACU has agreed to refund millions of dollars and forgive hundreds of thousands in other fees.

Under Fed. R. Civ. P. 23(h) and the law surrounding the common fund doctrine, Class Counsel and the Class Representative are entitled to be compensated from the Settlement for having achieved a benefit for the thousands of other Class Members. In connection with the Settlement, the Class Representative requests that, from the Settlement Fund, the Court approve payments of: (1) attorneys' fees to Class Counsel in the amount of $1,026,145.33, which represents

one-third of the value of the Settlement; (2) reimbursement of costs and expenses to Class Counsel in the amount of $12,286.08; (3) costs of settlement administration to KCC Class Action Services, LLC (the "Settlement Administrator") in an amount up to $62,500.00; and (4) a service award to the Class Representative in the amount of $10,000.00. These requests are all contemplated by the Settlement, are in line with other common fund cases in this District of comparable size, and are fair and reasonable given the work involved, the risks overcome, and the outstanding results achieved for the Classes.

## LEGAL STANDARDS

### I. Courts in the Eighth Circuit commonly award attorneys' fees of one-third of the total value of a settlement.

Under Rule 23(h) and "the 'common fund' doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds" in a class action. *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) (citing Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole")). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478.

"In the Eighth Circuit, use of the percentage of the fund method when awarding attorneys' fees in a common fund case is not only approved, but also 'well established.'" *In re NuvaRing Prod. Liab. Litig.*, No. 4:08-MDL-1964-RWS, 2014 WL 7271959, *2 (E.D. Mo. Dec. 18, 2014). Indeed, in common fund cases, the percentage of the benefit approach is "recommended." *Tussey*, 2019 WL 3859763, at *2; *see also Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (approving percentage method of awarding fees); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140,

4

1157 (8th Cir. 1999) (same); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (same).[3] The percentage of the benefit approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d. Cir. 2005); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (percentage of fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"). "[U]nder the percentage approach, the class members and the class counsel have the same interest—maximizing the recovery of the class." Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998). The percentage of the benefit is particularly appropriate where none of the settlement funds will revert to the defendant. *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-4321NKL, 2015 WL 3460346, at *4 n.1 (W.D. Mo. June 1, 2015).

Courts determine the total benefit to the class "based on both the monetary and the non-monetary value of the settlement." *Tussey*, 2019 WL 3859763, at *2; *see also* Principles of the Law of Aggregate Litigation, A.L.I., § 3.13(b) (May 20, 2009) ("a percent-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and the nonmonetary value of the settlement."). Thus, consideration of injunctive or declaratory relief, as well as savings to Class Members or elimination of their debts is appropriately considered as part of the total value of a settlement. *Tussey*, 2019 WL 3859763, at *2 (including tax avoidance and injunctive relief in addition to monetary relief as being the basis

---

[3] A Court has discretion to use the percentage-of-the-benefit method or the lodestar cross-check method in determining a fee. *In re NuvaRing Prod. Liab. Litig.*, 2014 WL 7271959, at *4. Even when a lodestar cross-check is done, it "need entail neither mathematical precision nor bean counting" and a court "need not scrutinize each time entry" and can rely on "representation[s] by class counsel as to total hours." *Id.*

5

for the total value of the settlement for determining an appropriate common-fund fee); *Barfield*, 2015 WL 3460346, at *4 (including administrative costs paid separately by defendant as being part of the total value of the settlement).

As to the appropriate percentage to award to Class Counsel, the amount is within the discretion of the court, but "courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming 33% fee) (quoting *Khoday v. Symantec Corp.*, No. 11-cv-180, 2016 WL 1637039, at *9-11 (D. Minn. Apr. 5, 2016)); *In re U.S. Bancorp. Litig.*, 291 F.3d at 1038 (affirming 36% fee); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (affirming 33% fee). Within this range, the most common fee awarded is one-third of the value of the settlement. *See, e.g., Caligiuri*, 855 F.3d at 865–66 (affirming one-third fee); *Huyer*, 849 F.3d at 399–400 (same); *Barfield*, 2015 WL 3460346, at *4 (awarding one-third fee and collecting cases awarding one-third fees).

Finally, although the Eighth Circuit has not formally established fee-evaluation factors, it has approved consideration of several, none of which is determinative. Specifically, in *Caligiuri*, the Eighth Circuit held that it was appropriate in evaluating the fee to look at various factors, including: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed (i.e., whether their fee was fixed or contingent); (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the reaction of the class; and (6) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. 855 F.3d at 866. Evaluation of these factors assists a court in determining a reasonable fee. *Id.*

6

**II.     Courts in the Eighth Circuit award reimbursement of reasonable costs and expenses advanced by Class Counsel.**

In addition to fees, "[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved." *Tussey*, 2019 WL 3859763, at *5 (quoting Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.)); *see also Sprague v. Ticonic*, 307 U.S. 161, 166–67 (1939) (recognizing a federal court's equity power to award costs from a common fund)). "Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client." *Tussey*, 2019 WL 3859763, at *5 (quoting *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008)). "Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Id.* (collecting cases).

As to amount, "reducing litigation expenses because the district judge thinks costs too high in general is not permissible." *Id.* (internal quotations omitted). And, in general, courts approve requested expense reimbursements because class counsel brings the case on a contingent basis, "so they had a strong incentive to keep costs to a reasonable level." *Id.* Courts in this district have noted that expenses equal to or slightly greater than 4% of the relief obtained for the class "should be viewed as generally reasonable." *Id.* (citing Eisenberg, Theodore and Miller, Geoffrey P., "Attorney Fees in Class Action Settlements: An Empirical Study" (2004). *Cornell Law Faculty Publications.* Paper 356.); *see also Keslar v. Bartu*, 201 F.3d 1016, 1017 (8th Cir. 2000) (per curiam) (finding no abuse of discretion in $17,000 cost award when case settled for only $70,000).

### III. Courts in the Eighth Circuit commonly award class representative service awards of $10,000 or more.

Apart from Class Counsel, "[a]t the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." 5 *Newberg on Class Actions* § 17:1 (5th ed. 2015) "Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'" *Caligiuri*, 855 F.3d at 867 (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)). Otherwise, most people could not afford to spend the time and effort to pursue what would provide only a modest individual recovery for the effort involved but would also benefit thousands of other people who do not have to expend any time or resources. *See id.* Relevant considerations in determining whether to grant an incentive award include actions plaintiffs took to protect the interests of the class; the degree to which the class has benefitted from those actions; and the amount of time and effort plaintiffs expended in pursuing the litigation. *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

As to amount, "courts in this circuit regularly grant service awards of $10,000 or greater." *Caligiuri*, 855 F.3d at 867 (8th Cir. 2017) (approving $10,000 service award) (citing *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs); *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving $10,000 service awards to each of nine plaintiffs). And much higher service awards are not uncommon. *See, e.g.*, *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (approving $15,000 service awards to two representatives); *Tussey*, 2019 WL 3859763, at *6 (approving $25,000 service awards to each of three representatives); *In re*

8

*Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *25 (E.D. Mo. June 30, 2005) (approving $26,625 service award).

## DISCUSSION

Under these standards, the Court should grant the requested payments from the Settlement Fund of attorneys' fees, expenses and costs, the Settlement Administrator's costs, and a service award to the Class Representative. All of the requested amounts are reasonable, in line with amounts routinely approved in the Eighth Circuit, and well within the Court's discretion.

**I.     The Court should award Class Counsel attorneys' fees from the Settlement Fund in the amount of one-third of the value of the Settlement.**

The Court should award Class Counsel the standard fee of one-third of the value of the Settlement, which is the fee amount the Settlement contemplates. Not only is this amount common in the Eighth Circuit, six of the seven factors identified in *Caligiuri* support approving the requested fee. 855 F.3d at 866 (listing factors). The remaining factor (the reaction of the class) is expected to highly favor approval of the fee but is not yet definitively known because the deadline to object will not pass until November 2, 2020. Toops Decl. ¶ 13 ("In counsel's experience, a settlement in this range is likely to be viewed favorably by the Class Members who will appreciate receiving compensation from this lawsuit without having to expend any resources of their own."). As of the date hereof, Plaintiff has received no objections to the Settlement. Plaintiff will update the Court as to whether she has received any objections to the Settlement once the November 2, 2020 deadline has passed.

First, the benefit conferred by the Settlement is substantial and valued at over $3 million, including $2,325,000 in cash refunds and $753,436 in outstanding fees due that will be forgiven. *Id*. ¶ 8. This represents approximately half of the total alleged damages in this case, and it will be distributed directly to Class Members, with no need to submit a claim, and no reversion of any

9

funds to Defendant. *Id*. ¶ 9. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Second, the risks of the litigation for Class Counsel were high. Toops Decl. ¶ 13. Class Counsel took this case on a 100% contingency basis, meaning that Class Counsel labored and advanced their own funds to prosecute the case all at the risk of never being paid for their work or reimbursed for their expenses. Class Counsel devoted their time and energy to this matter, instead of pursuing other income, all at the risk of never getting paid and, at best, being paid at some point potentially many years down the road. Had Defendant prevailed on the merits, on class certification, or on appeal, Class Counsel might have recovered nothing for the time and expense they invested in representing the Classes. *Id.* This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Third, this case involved complexities of bank processing and law that are novel and evolving. To even be able to identify the alleged inappropriate fees requires specialized knowledge and skill, as do the theories surrounding the alleged fees, not to mention the specialized knowledge of class action procedure required to achieve certification, let alone settlement. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Fourth, the complexity of the case is further shown by the skill of the lawyers involved on both sides of the case. Class Counsel has a national class action practice involving many areas of complex litigation, but particularly bank fees of this very type. *See* Second Toops Decl. ¶¶ 13-19; *see also, e.g., Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cnty., Ky.); *L&N Fed. Credit Union*, No. 19-CI-002873 (Jefferson Cnty., Ky.); *Old Hickory Credit Union*, No. 19-475-II (Davidson Cnty., Tenn.); *Wilson Bank & Trust*, No. 19-400-BC (Tenn. Bus. Ct.); *Ind. Members Credit Union*, No. 49D02-1804-PL-016174 (Marion Cnty., Ind.); *ORNL Fed. Credit Union*, No.

10

B9LA0107 (Anderson Cnty., Tenn.) (same); *Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind.) (same). This skill has been recognized in courts across the country. *See id.*; *see also Canvas Credit Union*, 2019-cv-30516 (Denver Cnty., Colo.); *Apple Fed. Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va.); *Bank of Am.*, No. 5:14-cv-03224-EGS (E.D. Pa.). On the other side of the case, Defendant is represented by an international law firm that is one of the largest in the country and is a formidable opponent. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Fifth, the requested one-third fee is the same amount that Class Counsel has been awarded in similar bank fee litigation and in class action litigation in general in courts across the country. *See* Second Toops Decl. ¶ 9; *see also, e.g., Fort Knox Fed. Credit Union*, No. 19-CI-01281 (Hardin Cnty., Ky.) (33% fee award); *L&N Fed. Credit Union*, No. 19-CI-002873 (Jefferson Cnty., Ky.) (same); *Old Hickory Credit Union*, No. 19-475-II (Davidson Cnty., Tenn.) (same); *Wilson Bank & Trust*, No. 19-400-BC (Tenn. Bus. Ct.) (same); *Ind. Members Credit Union*, No. 49D02-1804-PL-016174 (Marion Cnty., Ind.) (same); *ORNL Fed. Credit Union*, No. B9LA0107 (Anderson Cnty., Tenn.) (same); *Centra Credit Union*, No. 03D01-1804-PL-001903 (Bartholomew Cnty., Ind.) (same); *Canvas Credit Union*, 2019-cv-30516 (Denver Cnty., Colo.) (same); *Apple Fed. Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va.) (same); *Bank of Am.*, No. 5:14-cv-03224-EGS (E.D. Pa.) (same). This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Thus, all of these factors support the Court's discretion in approving the requested attorneys' fee amount of one-third of the value of the Settlement, which is an amount routinely awarded in the Eighth Circuit. *See* Second Toops Decl. ¶ 8; *see also Caligiuri*, 855 F.3d at 866 (affirming 33% fee) (quoting *Khoday*, 2016 WL 1637039, at *9-11 (D. Minn. Apr. 5, 2016)); *Huyer*

*v. Buckley*, 849 F.3d at 399 (affirming 33% fee); *Barfield*, 2015 WL 3460346, at *4 (collecting cases awarding one-third fees).

## II. The Court should award Class Counsel and the Settlement Administrator reimbursement from the Settlement Fund of costs and expenses incurred in litigating this case to settlement.

The Court should likewise award Class Counsel and the Settlement Administrator reimbursement of the costs and expenses they advanced in litigation this case, which are reasonable. Here, Class Counsel has advanced $12,286.08 in expenses for filing fees, postage, mediation fees, expert fees, and travel and meal expenses. *See* Second Toops Decl., at Ex. B. In addition, the Settlement Administrator has agreed to cap its costs at $62,500.00 in connection with its work in sending over 14,000 postcards and over 20,000 e-mails to notify Class Members of the Settlement, administering the settlement website, handling the significant communications with interested Class Members, and administering the Settlement Fund and payments from that fund. *Id*. ¶ 21. The requested total costs and expenses of Class Counsel and the Settlement Administrator are $74,786.08, or only 2.4% of the value of the Settlement, and therefore are reasonable and should be approved. *See Tussey*, 2019 WL 3859763, at *5 (holding that expenses of even 4% of the settlement value are generally reasonable).

## III. The Court should award the Class Representative payment from the Settlement Fund of a service award of $10,000.

Finally, the Court should grant the Class Representative a service award of $10,000 in recognition of the time and effort she spent and the result she obtained on behalf of the absent Class Members who will receive compensation without even having to submit a claim. The Class Representative has regularly consulted with Class Counsel, provided documents and information, reviewed pleadings, and participated in the settlement process, including attending an in-person mediation during the coronavirus pandemic. Toops Decl. ¶ 2; Second Toops Decl. ¶ 22. Without

12

Case 4:19-cv-00629-FJG   Document 46   Filed 10/15/20   Page 16 of 19

the Class Representative's efforts, the over $3 million in benefits for the Classes would never have been achieved. These factors support granting a service award. *In re U.S. Bancorp Litig.*, 291 F.3d at 1038. Now that the case has achieved a significant recovery, the Class Representative should be rewarded for having obtained this benefit for the thousands of other Class Members when the settlement funds are directly deposited into their accounts or mailed to them as a check. The Court is well within its discretion to award the requested $10,000 service award, which is the amount "regularly" awarded in the Eighth Circuit. *Caligiuri*, 855 F.3d at 867 ("courts in this circuit regularly grant service awards of $10,000 or greater").

## CONCLUSION

Upon granting final approval to the settlement, the Court should enter an order awarding from the Settlement Fund the payments of: (1) attorneys' fees to Class Counsel in the amount of $1,026,145.33; (2) reimbursement of costs and expenses to Class Counsel in the amount of $12,286.08; (3) costs of settlement administration to the Settlement Administrator in an amount up to $62,500; and (4) a service award to the Class Representative in the amount of $10,000.

Dated: October 15, 2020                                    Respectfully submitted,

*/s/ Lynn A. Toops*
Lynn A. Toops (*pro hac vice*)                             J. Gerard Stranch, IV (*pro hac vice*)
COHEN & MALAD, LLP                                         Martin F. Schubert (*pro hac vice*)
One Indiana Square, Suite 1400                             BRANSTETTER, STRANCH
Indianapolis, Indiana 46204                                & JENNINGS, PLLC
Telephone: (317) 636-6481                                  223 Rosa L. Parks Avenue, Suite 200
ltoops@cohenandmalad.com                                   Nashville, Tennessee 37203
                                                           Phone: (615) 254-8801
Ashlea Schwarz (Mo. Bar No. 60102)                         gerards@bsjfirm.com
PAUL LLP                                                   martys@bsjfirm.com
601 Walnut Street, Suite 300
Kansas City, Missouri 64106                                Jeffrey D. Kaliel (*pro hac vice*)
Telephone: (816) 984-8100                                  Sophia G. Gold (*pro hac vice*)
ashlea@paulllp.com                                         KALIEL PLLC
                                                           1875 Connecticut Ave. NW 10th Floor
Christopher D. Jennings (*pro hac vice*)                   Washington, D.C. 20009
JOHNSON FIRM                                               Telephone: (202) 350-4783
610 President Clinton Avenue, Suite 300                    *jkaliel@kalielpllc.com*
Little Rock, Arkansas 72201                                *sgold@kalielplllc.com*
T: (501) 372-1300
chris@yourattorney.com

*Counsel for Plaintiff and the Classes*

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing by electronic mail to the attorneys and parties of record.

                                                  */s/ Lynn A. Toops*
                                                  Lynn A. Toops